IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA )
)
)
Plaintiff, ) Civil Action No.
)
v. )
)
XCEL ENERGY, INC., )
NORTHERN STATES POWER )
MINNESOTA, & )
XCEL ENERGY SERVICES, INC. )
)
)
Defendants. )
)

**COMPLAINT**

1. The United States of America ("United States"), by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the United States Environmental Protection Agency ("EPA" or "Agency"), alleges:

**NATURE OF ACTION**

2. This is a civil action brought by the United States against Xcel Energy, Inc. Northern States Power Minnesota, and Xcel Energy Services, Inc. (collectively "Defendants" or "Xcel") to obtain injunctive relief and civil penalties for violations of Section 114 of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7414. The case arises from Xcel's refusal to provide information to EPA regarding capital projects planned for construction at two of Xcel's Minnesota power plants, the Black Dog and Sherburne County Plants. Pursuant to Section 114 of the Act, 42 U.S.C. § 7414, EPA requested this

information in furtherance of its charge to enforce the Act's New Source Review, Prevention of Significant Deterioration ("PSD") preconstruction permitting program, 42 U.S.C. §§ 7470-7479.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1331, 1345 and 1355.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1395, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because Defendants' principal places of business are located in this district, the violations have occurred and are occurring in this district, and the two power plants at issue are located in this district.

**NOTICE**

5. The United States has provided notice of the commencement of this action to the Minnesota Air Pollution Control Agency pursuant to CAA Section 113(b), 42 U.S.C. § 7413(b).

**THE PARTIES**

6. Plaintiff, the United States of America, is acting by authority of the Attorney General of the United States and through the undersigned attorneys, at the request and on behalf of the Administrator of EPA. Authority to bring this action is vested in the Attorney General of the United States by CAA Section 305, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

7. Xcel Energy, Inc. ("Xcel Energy") is a publicly traded utility holding company. Its 2009 annual revenues exceeded $9 billion, and it has subsidiary operating

companies with power plants and other utility operations in eight states. Xcel Energy's principal place of business is 414 Nicollet Mall, Minneapolis, Minnesota 54401.

8. Defendant Northern States Power Company Minnesota ("NSP") is one of Xcel Energy's subsidiary operating companies. NSP is an electric and gas utility serving 1.4 million electric customers in Minnesota, North Dakota and South Dakota. NSP shares the same principal place of business as Xcel.

9. Defendant Xcel Energy Services, Inc. is a subsidiary of Xcel Energy. It shares the same principal place of business as Xcel Energy and provides a full range of administrative and technical support services for Northern States and the other Xcel subsidiaries.

10. Each of the Defendants are corporate entities and, as such, "persons," within the meaning of CAA Section 302(e), 42 U.S.C. § 7602.

**THE POWER PLANTS**

11. Xcel Energy and/or its subsidiaries own and/or operate several power plants. Defendant NSP is the owner and/or operator of the Black Dog and Sherburne County ("Sherco") Plants.

12. The Sherco Plant is located in Becker, Minnesota on the Mississippi River and 45 miles northwest of the Twin Cities. Sherco has three coal-fired electric generating units ranging from 750 to 900 megawatts ("MW") in size.

13. The Black Dog Plant is located in Burnsville, Minnesota on the Minnesota River and slightly southwest of the Twin Cities. Black Dog has two coal-fired electric generating units, Units 3 and 4, which are 120 and 186 MW.

14. The Sherco and Black Dog Plants are “major emitting facilities” and “major stationary sources” within the meaning of the Act and EPA’s PSD regulations because they each emit thousands of tons of air pollutants annually.

**STATUTORY BACKGROUND**

15. Congress enacted the CAA “to protect and enhance the quality of the Nation’s air resources so as to promote the public health and welfare and the productive capacity of its population.” 42 U.S.C. § 7401(b)(1).

16. The CAA is a strict liability statute because Congress found such liability to be essential to meet the purpose of the Act to protect and improve the quality of the nation’s air.

17. Section 109 of the Act, 42 U.S.C. § 7409, required EPA to establish national ambient air quality standards (“NAAQS”) that specify the maximum permissible concentration of air pollutants in different areas of the country. The CAA requires states to meet these NAAQS by developing plans, called State Implementation Plans (“SIPs”), which impose regulatory requirements on individual sources of air pollution. 42 U.S.C. §§ 7410(a)(1), (a)(2).

18. The NSR program addresses the impact on ambient air quality resulting from newly constructed or modified pollutant-emitting facilities. The NSR program has two elements: a PSD program applying in areas of the country that do not exceed the NAAQS, 42 U.S.C. §§ 7470-7479, and a Nonattainment NSR program for areas that fail to satisfy the NAAQS, 42 U.S.C. §§ 7501-7515

19. Only the PSD program is relevant here because Xcel's Sherco and Black Dog plants are respectively located in Sherburne and Dakota Counties, areas deemed to satisfy the NAAQS.

20. Section 165 of the Act, entitled "Preconstruction Requirements," provides that "[n]o major emitting facility . . . may be constructed" without first obtaining a PSD permit. 42 U.S.C. § 7475(a)(1).

21. The Act defines "construction" to include both newly constructed facilities and "modifications" to existing plants. 42 U.S.C. § 7479(2)(C). Congress defined "modification" to include "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant." 42 U.S.C. § 7411(a)(4).

22. EPA has issued regulations prescribing the types of "modifications" to existing sources that trigger PSD preconstruction permitting. 40 C.F.R. § 52.21.

23. The PSD regulations have been incorporated into the State of Minnesota's SIP and apply to the Sherco and Black Dog plants. 40 C.F.R. § 52.1234(b).

24. Section 167 of the Act provides, in relevant part, that: "The [EPA] Administrator shall . . . take such measures, including issuance of an order, or seeking injunctive relief, as necessary to prevent the construction or modification of a major emitting facility which does not conform to the requirements of [PSD] . . . ." 42 U.S.C. § 7477 (emphasis added).

25. Section 114(a) of the Act authorizes EPA to request information. It states, in part:

> For the purpose . . . (ii) of determining whether any person is in violation of any such standard or any requirement of such a plan, *or* (iii) carrying out any provision of this chapter . . . the Administrator may require any person . . . who the Administrator] believes may have information necessary for the purposes set forth in this subsection . . . on a one-time, periodic or continuous basis to . . . provide such . . . information as the Administrator may reasonably require . . . .

42 U.S.C. § 7414(a) (emphasis added).

26. Section 113(b) of the Act 42 U.S.C. § 7413(b) authorizes EPA to institute a civil action for injunctive relief and civil penalties for violations of Section 114(a), 42 U.S.C. § 7414(a).

**EPA'S SECTION 114 INFORMATION REQUESTS**

27. On July 27, 2009, EPA issued an information request under Section 114 of the CAA to Xcel ("Section 114 Requests" or "Requests"). The Section 114 Requests are attached at Exhibit 1 to the Complaint.

28. The Section 114 Requests were limited to the Black Dog and Sherco Plants. Request No. 6 seeks "any … document(s) that sets forth or identifies the projected operational or equipment changes or projected capital expenditures that Xcel Energy will be making at Black Dog and Sherburne Generating Stations in the next five years (or any other planning period used by Xcel.)." Request No. 10 seeks documents and a description of "planned additional generation capacity installations" at the same Xcel plants within the next ten years.

29. On July 31, 2009, Xcel received the Section 114 Requests.

30. By letter dated August 21, 2009, Xcel responded to the Section 114 Requests. In its August 21 letter, Xcel stated in response to Requests Nos. 6 and 10 of the Requests: "Xcel Energy is not producing documents related to projects that have not been implemented or completed at the [Black Dog and Sherco] Stations. EPA's request for such information exceeds the scope of EPA's authority under Section 114 of the CAA because it cannot assist EPA to determine whether Xcel Energy is in violation of the CAA." (emphasis in original).

31. In repeated attempts to obtain Xcel's compliance with the Section 114 Requests, EPA wrote Xcel a series of letters. EPA explained that that the requested information on planned construction projects was relevant to the lawful purpose of carrying out its responsibilities under the CAA, including EPA's authority under Section 167 of the Act "to prevent the construction or modification of a major emitting facility which does not conform" to the requirements of the PSD preconstruction permitting program. 42 U.S.C. § 7477. However, Xcel responded to EPA's letters by continuing to object, asserting that EPA lacked statutory authority to request information about future construction projects. Thus, Xcel refused to disclose documents and other information on planned capital projects at the Black Dog and Sherco Plants.

32. In a final effort to resolve this matter, EPA, on March 2, 2010, wrote Xcel. In this letter, EPA narrowed and modified the Section 114. EPA agreed to immediately seek information only on those capital projects at Black Dog and Sherco planned for construction in the next two years, *i.e.* through February 2012. EPA stated that Xcel Energy could provide a periodic update on projects planned for the remainder of the five

year period. EPA explained that it selected the two year period because "a PSD . . . permit application needs to be submitted to the permitting authority far in advance of construction commencement and that the permitting process can take at a minimum of 18 months to 2 years . . . ." That two year period includes time needed to review the relevant information to determine whether PSD applies to a project, and if it does, to prepare the PSD application materials.

33. In a March 17, 2010 letter, Xcel responded to EPA's March 2 letter. It continued to refuse to disclose the requested documents on the construction plans at the Black Dog and Sherco plants. Xcel, instead, reiterated its prior objections.

34. The correspondence between EPA and Xcel relating to the Section 114 Requests is collectively found at Exhibit 2 to the Complaint.

## FIRST CLAIM FOR RELIEF

**(Violation of Section 114 of the CAA - Refusal to Provide Information Regarding the Sherco Power Plant)**

35. Paragraphs 1 through 33 are re-alleged and incorporated by reference.

36. Defendants are persons who EPA believes may have information regarding the Sherco Power Plant necessary for the information-gathering purposes set forth in Section 114(a)(1) of the CAA, 42 U.S.C. § 7414(a)(1).

37. EPA issued the Section 114 Requests pursuant to its lawful, statutory authority under Section 114 of the Act, 42 U.S.C. § 7414.

38. As narrowed by EPA's March 2, 2010 letter, the Section 114 Requests, specifically Requests No. 6 and 10, seek documents regarding planned capital projects at

the Sherco Plant Power Plant within the next two years, with certain periodic updates to be provided annually.

39. The Requests were issued for lawful purposes of carrying out EPA's responsibilities for enforcing the PSD preconstruction program, including its authority under Section 167 of the Act to "prevent the construction or modification of a major emitting facility which does not conform" the preconstruction requirements of PSD. 42 U.S.C. § 7477.

40. The Section 114 Requests seek relevant and reasonable information for such lawful purposes under the PSD program.

41. Defendants are strictly liable under Section 114(a) for refusing to provide EPA, in whole or part, the requested information and documents about capital projects planned for construction at the Sherco Power Plant.

42. Defendants' failure to respond to the Section 114 Requests fully and completely subjects Defendants to injunctive relief and a civil penalty of up to $37,500 per day for each violation pursuant to Section 113(b) of the CAA and the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SECOND CLAIM FOR RELIEF

### (Violation of Section 114 of the CAA - Refusal to Provide Information Regarding the Black Dog Power Plant)

43. Paragraphs 1 through 42 are re-alleged and incorporated by reference.

44. Defendants are persons who EPA believes may have information regarding the Black Dog Plant necessary for the information-gathering purposes set forth in Section 114(a)(1) of the CAA, 42 U.S.C. § 7414(a)(1).

45. EPA issued the Section 114 Requests pursuant to its lawful, statutory authority under Section 114 of the Act, 42 U.S.C. § 7414.

46. As narrowed by EPA's March 2, 2010 letter, the Section 114 Requests, specifically Requests No. 6 and 10, seek documents regarding planned capital projects at the Black Dog Plant within the next two years, with certain periodic updates to be provided annually.

47. The Requests were issued for lawful purposes of carrying out EPA's responsibilities for enforcing the PSD preconstruction program, including its authority under Section 167 of the Act to "prevent the construction or modification of a major emitting facility which does not conform" the preconstruction requirements of PSD. 42 U.S.C. § 7477.

48. The Section 114 Requests seek relevant and reasonable information for such lawful purposes under the PSD program.

49. Defendants are strictly liable under Section 114(a) for refusing to provide EPA, in whole or part, the requested information and documents about capital projects planned for construction at the Black Dog Plant.

50. Defendants' failure to respond to the Section 114 Request fully and completely subjects Defendants to injunctive relief and a civil penalty of up to $37,500 per day for each violation pursuant to Section 113(b) of the CAA and the Federal Civil

Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, prays that the Court:

1. Issue a preliminary and/or permanent injunction ordering Defendants to provide the information required by the Section 114 Requests;

2. Order Defendants to pay a civil penalty to the United States of up to $37,500 per day for each violation of Section 114 of the CAA;

3. Award the United States the costs of this action; and

4. Grant the United States such further relief as the Court deems just and proper.

Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

JUSTIN A. SAVAGE
Senior Counsel
THOMAS BENSON
KATHERINE VANDERHOOK
Trial Attorneys
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice

P.O. Box 7611
Washington, D.C. 20530
(202) 514-5293
justin.savage@usdoj.gov

B. Todd Jones
United States Attorney

*s/Friedrich A. P. Siekert*
BY: FRIEDRICH A. P. SIEKERT
Assistant U.S. Attorney
Attorney ID No. 142013
Email: Fred.Siekert@usdoj.gov
612.664.5600 (office)
612.664.5697 (direct)

OF COUNSEL
GAYLENE VASATURO
Associate Regional Counsel
U.S. Environmental Protection Agency, Region V
77 W. Jackson Blvd.
Chicago, Illinois 60604

SEEMA KAKADE
Attorney-Advisor
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave.
Washington, D.C. 20460